## UNITED STATED DISTRICT COURT
## SOUTHER DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

CASE NO. _____

TERRI SMITH,

       Plaintiff,

**JURY DEMAND**

vs.

MELISSA JACKSON,
HEIDIDRESSAGE, LLC, a
Florida corporation, and
ADELHEID DEGELE a/k/a
HEIDI DEGELE,

       Defendants.

_____

## COMPLAINT

Plaintiff, TERRI SMITH ("Plaintiff"), sues Defendant, MELISSA JACKSON ("Jackson"), Defendant, HEIDIDRESSAGE, LLC ("Heidi LLC"), and Defendant, ADELHEID DEGELE a/k/a HEIDI DEGELE ("Degele," and together with Heidi LLC, the "Degele Defendants," and collectively, with Jackson, "Defendants"), and alleges as follows:

## THE PARTIES

1.     Plaintiff is an individual, and a citizen, and resident, of the State of Washington.

2.     Jackson is an individual, and a citizen, and resident, of the State of Florida.

3.     Heidi LLC is a Florida limited liability company, with its principal place of business located at 19604 Egret Lane, Loxahatchee, Florida 33470.

4.     Degele is an individual, and a citizen, and resident, of the State of Florida.

5.     Degele is the only member of the Heidi LLC.



1

6.      At all times relevant hereto, the Degele Defendants acted as agents for Jackson, and the conduct complained of herein, as it relates to the Degele Defendants, was within the scope of the Degele Defendants' agency-principal relationship with Jackson.

7.      As a result, the conduct of the Degele Defendants is imputed to Jackson.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the matter, pursuant to 28 U.S.C §1332(1), because the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.000), exclusive of interest and costs, and because there is diversity as Plaintiff is a citizen of Washington, and all Defendants are citizens of Florida.

9.      Venue in this Court is appropriate, pursuant to 28 U.S.C §1391(b), because Defendants are all residents of the State of Florida, and at least Defendant resides in this District.

10.     Venue is also appropriate in this Court, because the subject agreement contains a venue selection provision that provides that the parties agree that the venue for any legal action shall be in a court of competent jurisdiction located in Palm Beach County, Florida.

## FACTS COMMON TO ALL COUNTS

11.     Plaintiff in a non-professional equestrian that decided that she wanted to purchase a horse to compete in dressage.

12.     Plaintiff was introduced to Degele by the agent that Plaintiff retained in connection with her prospective purchase of a horse to compete in dressage.

13.     At the time, Hooli, now known as Whirlpool, was owned by Jackson.

14.     At all relevant times, the Degele Defendants acted as Jackson's agents in connection with the sale of Whirlpool.



15.     Plaintiff informed the Degele Defendants that she was interested in purchasing a horse to be ridden in dressage competitions.

16.     In her initial discussions with the Degele Defendants, which occurred in or about January, 2016, Plaintiff emphasized that the health, soundness, and fitness for intended use were critical to her, and that she would require certain assurances with respect to same from Defendants.

17.     Plaintiff asked the Degele Defendants if Whirlpool had any health, or medical, issues.

18.     The Degele Defendants responded that Whirlpool underwent colic surgery in 2012, and that Whirlpool fully recovered.

19.     The Degele Defendants further represented to Plaintiff that other than the colic surgery, Whirlpool had no other health, or medical issues, including no history of lameness.

20.     The Degele Defendants assured Plaintiff that Whirlpool was healthy, sound, and fit to be utilized as a competitive dressage horse.

21.     Based upon the Degele Defendants' representations, and in reliance on same, Plaintiff decided to purchase Whirlpool for One Hundred Thousand Dollars (the "Purchase Price"), subject to the performance of a pre-purchase examination.

22.     On our about January 30, 2016, Plaintiff had a pre-purchase examination performed on Whirlpool.

23.     However, because of the Degele Defendants' representations that other than colic surgery, Whirlpool had no injuries, or other health issues, Plaintiff did not have a MRI performed on Whirlpool.



24.     Instead, the standard pre-purchase x-rays, which do not reveal soft tissue damage, were performed on Whirlpool.

25.     On February 3, 2016, the Degele Defendants sent Plaintiff that certain Equine Purchase Agreement (the "PSA"), a copy of which is attached hereto at Exhibit "A," pursuant to which, *inter alia*, if executed by Plaintiff, and Jackson, Whirlpool would be sold to Plaintiff for the Purchase Price.

26.     Upon receipt of the PSA, and reviewing same, also on February 3, 2016, Plaintiff emailed the Degele Defendants (the "Whirlpool Health Confirmation Email"), and once again asked if Whirlpool had "any other known issues outside of the colic surgery?  Behavior issues, injury, lameness, material illness."

27.     On February 3, 2016, the Degele Defendants responded to the Whirlpool Health Confirmation Email (the "Degele Defendants' Email"), and once again confirmed that Whirlpool had no prior issues, and that the "AS IS" Clause contained in the PSA, was just a "general clause." A copy of the Whirlpool Health Confirmation Email, and the Degele Defendants' Email, is attached hereto at Exhibit "B."

28.     Pursuant to Fla. Admin. Code Rule 5H-26.003(12), Defendants were required provide Plaintiff with accurate medical information regarding Whirlpool.

29.     Based upon the Degele Defendants' multiple assurances, which are imputed to Jackson, that other than the colic surgery, Whirlpool had no prior health, or medical, issues, Plaintiff executed the PSA, thereby agreeing to purchase Whirlpool for the Purchase Price.

30.     Jackson also executed the PSA.



31.    On or about February 8, 2016, Plaintiff's insurance agent contacted an insurance underwriter to ensure Whirlpool.

32.    The insurance underwriter Plaintiff's insurance agent contacted happened to be the same underwriter that Jackson used to insure Whirlpool when she owned the horse.

33.    The insurance underwriter advised Plaintiff's insurance agent that Whirlpool had prior insurance exclusions related to degenerative joint disease, bone spurs, and arthritis.

34.    Plaintiff was shocked to learn of these exclusions, as the Defendants represented to Plaintiff that, other than colic surgery, Whirlpool had no prior health, or medical, issues.

35.    Meanwhile, Whirlpool arrived in Washington via airplane.

36.    Plaintiff contacted the Degele Defendants to find out about the insurance exclusions, and requested Whirlpool's medical records.

37.    The Degele Defendants advised Plaintiff that Jackson would only provide medical records pertaining to Whirlpool that related to the insurance exclusions.

38.    The Degele Defendants forwarded Plaintiff an email from Jackson (the "Jackson Email"), which also attached a Veterinarian's Report.  A copy of the Jackson Email, and the accompanying Veterinarian's Report, is attached hereto at composite Exhibit "C."

39.    In the Jackson Email, Jackson stated that the insurance exclusion related to a claim for a reaction that Whirlpool had to being administered a medication called Tildren.

40.    In the Veterinarian's Report, Dr. Robert Scott stated that, on November 17, 2014, Whirlpool was treated for Left Coffin Joint Arthrosis.

41.    Jackson provided authorization to Dr. Scott to permit Plaintiff to speak with him regarding the insurance claim only.



42.     On or about February 15, 2016, Plaintiff spoke with Dr. Scott on the telephone.

43.     Plaintiff was aghast when Dr. Scott advised her that he treated Whirlpool for lameness in the left front.

44.     Defendants did not disclose that Whirlpool was previously lame, despite the fact that Plaintiff directly asked the Degele Defendants if Whirlpool had any health issues, other than colic.

45.     After speaking with Dr. Scott, it was clear to Plaintiff that Defendants did not provide her with an accurate medical history for Whirlpool.

46.     On or about February 17, 2016, Plaintiff noticed that Whirlpool was lame, despite the fact that he had not suffered any injuries while owned by Plaintiff.

47.     Plaintiff had Whirlpool examined by a veterinarian, who diagnosed Whirlpool as being lame in the right, and left, front, and possible left rear.

48.     The veterinarian suggested that a MRI be performed.

49.     On or about May 24, 2016, a MRI was performed on Whirlpool.

50.     The MRI revealed that Whirlpool had significant injuries in both front feet that had scaring and chronicity, which established that the injuries occurred prior to Plaintiff's purchase of Whirlpool.

51.     Upon information and belief, Defendants used anti-inflammatory steroids, and other drugs, to conceal Whirlpool's injuries during Plaintiff's pre-sale vetting process.

52.     Whirlpool is currently lame, and under stall rest.

53.     Whirlpool will not fully recover.



6

54.     Defendants have defrauded Plaintiff, and engaged in deceptive and unfair trade practices which have caused, and continue to cause, Plaintiff substantial damages.

55.     All conditions precedent to the filing of this action have occurred, or have been waived or excused.

## COUNT I

### (Rescission – On Behalf of Plaintiff, As Against Jackson)

56.     Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 – 55 as if more full set forth at length herein.

57.     Plaintiff agreed to purchase Whirlpool in reliance on the Degele Defendants' representations as to Whirlpool's health, suitability, and fitness for use as a competitive dressage horse.

58.     Plaintiff has come to learn that the Degele Defendants misrepresented Whirlpool's health, suitability, and fitness for use as a competitive dressage horse.

59.     Plaintiff has also come to learn that Defendants concealed the true nature of Whirlpool's health from Plaintiff, so that Plaintiff would purchase Whirlpool.

60.     The misrepresentations, and omissions, of material fact, were made by the Degele Defendants in the capacity as agents for Jackson.

61.     Had Defendants accurately disclosed Whirlpool's health to Plaintiff, Plaintiff would not have purchased Whirlpool.

62.     Plaintiff has no adequate remedy at law.



WHEREFORE, Plaintiff demands rescission of the purchase of Whirlpool, and rescissory damages, including attorneys' fees and costs, together with such other, further, and different relief as the Court deems just, equitable and proper.

## COUNT II

**(Fraudulent Inducement - On Behalf of Plaintiffs, and Against Defendants)**

63.     Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 – 55 as if more full set forth at length herein.

64.     The Degele Defendants made multiple misrepresentations, and omissions, of material fact related to Whirlpool's health, suitability, and fitness for use as a competitive dressage horse.

65.     Among other things, the Degele Defendants represented to Plaintiff multiple times that other than colic surgery, Whirlpool had no health, or medical, issues.

66.     The misrepresentations, and omissions, of material fact, were made by the Degele Defendants in their capacity as agents for Jackson, and in the scope of same.

67.     Therefore, the Degele Defendants' conduct is imputed to Jackson.

68.     Jackson omitted, and concealed, material facts related to Whirlpool's health, suitability, and fitness for use as a dressage horse.

69.     Among other things, Jackson, either individually, or through the Degele Defendants, did not accurately disclose, and concealed, Whirlpool's health, and medical, history, from Plaintiff.

70.     Upon information and belief, Defendants also gave, or had given, to Whirlpool, anti-inflammatory, and other medications to conceal Whirlpool's true health from Plaintiff.



8

71.    Had Defendants accurately disclosed Whirlpool's health, and medical, history to Plaintiff, Plaintiff would not have purchased Whirlpool.

72.    At the time Defendants made the misrepresentations, and omissions, of material fact, Defendants knew that they were false, and Defendants intended that Plaintiff would rely on them.

73.    Plaintiff relied on Defendants' misrepresentations, and omissions, of material fact.

74.    As a result of Defendants' misrepresentations, and omissions, of material fact, Plaintiff has suffered, and continues to suffer, substantial damages.

WHEREFORE, Plaintiff demands judgment against Defendants for damages in an amount to be determined, including punitive damages, and attorneys' fees and costs, together with such other, further, and different relief as the Court deems just, equitable and proper.

<u>**COUNT III**</u>

**(Negligent Misrepresentation – On Behalf of Plaintiff, As Against Defendants)**

75.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 – 55 as if more full set forth at length herein.

76.    The Degele Defendants made multiple misrepresentations, and omissions, of material fact related to Whirlpool's health, suitability, and fitness for use as a competitive dressage horse.

77.    Among other things, the Degele Defendants represented to Plaintiff multiple times that other than colic surgery, Whirlpool had no health, or medical, issues.

78.    The misrepresentations, and omissions of material fact, were made by the Degele Defendants in their capacity as agents for Jackson, and in the scope of same.



79. Therefore, the Degele Defendants' conduct is imputed to Jackson.

80. Jackson omitted, and concealed, material facts related to Whirlpool's health, suitability, and fitness for use as a dressage horse.

81. Among other things, Jackson, either individually, or through the Degele Defendants, did not accurately disclose, and concealed, Whirlpool's health, and medical, history, from Plaintiff.

82. Upon information and belief, Defendants also gave, or had given, to Whirlpool, anti-inflammatory, and other medications, to conceal Whirlpool's true health from Plaintiff.

83. Had Defendants accurately disclosed Whirlpool's health, and medical, history to Plaintiff, Plaintiff would not have purchased Whirlpool.

84. At the time Defendants made the misrepresentations, and omissions, of material fact, Defendants knew, or should have known, that they were false, and Defendants intended that Plaintiff would rely on them.

85. Plaintiff justifiably relied on Defendants' misrepresentations, and omissions, of material fact.

86. As a result of Defendants' misrepresentations, and omissions, of material fact, Plaintiff has suffered, and continues to suffer, substantial damages.

WHEREFORE, Plaintiff demands judgment against Defendants for damages in an amount to be determined, together with such other, further, and different relief as the Court deems just, equitable and proper.



## COUNT IV

### (Civil Conspiracy – On Behalf of Plaintiff, As Against Defendants)

87.  Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 – 55 as if more full set forth at length herein.

88.  Defendants engaged in a conspiracy to conceal the true nature of Whirlpool's health, fitness, and suitability for intended purpose from Plaintiff.

89.  Defendants committed multiple acts in furtherance of their conspiracy, including, but not limited to, making multiple misrepresentations, and omissions of material fact, regarding Whirlpool's health, fitness, and suitability for intended purpose.

90.  As a result of Defendants' conspiracy, and acts taken in furtherance thereof, Plaintiff has suffered, and continues to suffer, substantial damages.

WHEREFORE, Plaintiff demands judgment against Defendants for damages in an amount to be determined, including punitive damages, together with such other, further, and different relief as the Court deems just, equitable and proper.

## COUNT V

### (Violation of Chapter 501, Fla. Stat., Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA") – (On Behalf of Plaintiffs, Against Defendants)

91.  Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 – 55 as if more full set forth at length herein.

92.  Plaintiff is a "consumer" as defined by Section 501.203(7) of FDUTPA.

93.  Defendants have engaged in unfair, deceptive, and unconscionable acts and practices in violation of FDUTPA.



94.     Defendants have violated Chapter 5H-26.003(12) of the Florida Administrate Code, because they did not accurately disclose Whirlpool's medical history in response to Plaintiff's inquiry.

95.     Defendants have violated Chapter 5H-26.004 of the Florida Administrate Code, because the PSA does not contain the following statements, both of which are required to be included in the PSA by Chapter 5H-26.004 of the Florida Administrate Code:

    a.  "As the person signing below on behalf of the Owner, I hereby confirm that I am the lawful Owner of this horse or the Owner's duly authorized agent, and I am therefore authorized to convey legal title to the horse pursuant to this bills of sale."

    b.  "As the person signing below on behalf of the Purchaser, I understand that any warranties or representations from the Owner or the Owner's agent that I am relying upon in acquiring this horse, including warranties or representations with respect to the horse's age, medical condition, prior medical treatments, and the existence of any liens or encumbrances, should be stated in writing as part of this bill of sale."

96.     Defendants violations of Chapter 5H-26.003 of the Florida Administrate Code, and Chapter 5H-26.004 of the Florida Administrate Code, have resulted in actual damages to Plaintiff, and as such, said violations are considered an unfair and deceptive trade practice in violation of FDUPTA, pursuant to Chapter 5H-26.003(13) of the Florida Administrate Code.

97.     Defendants have also made misrepresentations, and omissions, of material facts while active participants in trade or commerce with Plaintiff.

98.     Defendants' unconscionable and deceptive acts and practices were designed to inflict injury and harm upon Plaintiff.



99.    Plaintiff has been injured by virtue of Defendants' deceptive and unfair trade practices as contemplated by the FDUTPA.

100.    As a result of Defendants' violations of FDUPTA, Plaintiff has suffered, and continues to suffer, substantial damages.

WHEREFORE, Plaintiff demands judgment against Defendants for damages in an amount to be determined, including punitive damages, and attorneys' fees and costs, and for such other, and further, relief as the Court deems just, equitable and proper.

## COUNT VI

### (Unjust Enrichment – On Behalf of Plaintiff, As Against Defendants)

101.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1-55 as if more full set forth at length herein.

102.    Plaintiff paid Jackson for a lame horse, the condition of which, Jackson misrepresented, either individually, or through the Degele Defendants.

103.    Jackson also concealed the true nature of Whirlpool's health, suitability, and fitness for intended purpose.

104.    The Degele Defendants made misrepresentations, and omissions, of material fact regarding Whirlpool's health, suitability, and fitness for intended purpose.

105.    The Degele Defendants received a commission as a result of the sale of Whirlpool from Jackson, to Plaintiff.

106.    These funds represent a benefit conferred on Defendants, which Defendants accepted, and retained.



107.    It would be inequitable for Defendants to retain the benefits conferred on them by Plaintiff.

108.    Defendants have been unjustly enriched at the expense of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants for damages in an amount to be determined, including attorneys' fees and costs, and for such other, further, and different relief as the Court deems just, equitable and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.


DATED:        August 15, 2016


BY:    /s/ Richard S. Lubliner
       RICHARD S. LUBLINER, ESQ.
       FBN: 0047741

       Greenstein and Lubliner, LLP
       1655 Palm Beach Lakes Boulevard, Suite 800
       West Palm Beach, Florida 33414
       Telephone: (561) 227-9344
       Facsimile: (561) 909-2114
       Primary Email: rlubliner@greenstein-law.com
       Alternate  Email  1:   nkelvy@greenstein-law.com
       Alternate Email 2: fdelia@greenstein-law.com



## EQUINE PURCHASE AGREEMENT

THIS EQUINE PURCHASE AGREEMENT is dated as of **February 3, 2016**, by and be-tween **Melissa Jackson,** (the "Seller") and **Terri Smith**(the "Purchaser").

## PRELIMINARY STATEMENTS

WHEREAS, the Seller owns the Horse described below; and

WHEREAS, the Purchaser wishes to purchase, and the Seller is willing to sell and convey the Horse in exchange for the Purchase Price (as defined herein), subject to the terms and conditions contained in this Agreement.

NOW THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## AGREEMENT

1.    **Description of Horse.**  The Horse which is the subject of this Agreement (the "Horse") is described as follows:

THAT CERTAIN **13** YEAR OLD  **Hanoverian,** APPROXIMATELY **16.2** HANDS TALL, WITH **Star with connected irregular stripe** ON ITS FACE/FOREHEAD AND **Hanoverian** BRAND ON ITS LEFT HIND QUARTER AND, WITH THE REGISTERED NAME OF "**Whirlpool",** BORN **2003,** BY **Widmark** OUT OF **Glimmer** BEARING **USEF Registration # 4905852,** AND USDF Registration # 1050628 (the "Horse").

2.    **Purchase Price**.  Upon the terms and subject to the conditions of this Agreement, the parties agree that the purchase price for the Horse shall be **One hundred Thousand Dollars** and No/100 **($100,000)** U.S. Dollars (the "Purchase Price"), less a deposit of **Eleven thousand dollars ($11,000)** (the "Deposit") with a balance due **Eighty Nine Thousand dollars ($89,000)** which shall be paid at Closing (as defined below) (collectively, the "Sales Proceeds") shall be paid at Closing (as defined below) (collectively, the "Sales Proceeds").  **\*Custom Saddle, Double bridle and blankets are included in purchase price**

3.    **Payment of Purchase Price.**  Purchaser shall deliver the full Purchase Price by wire transfer on or before the Closing Date (as defined below) to the following account:

> **Name: Melissa Jackson**
> **Account number:  5240457233**
> **Routing number:  063107513**

1



**Bank Name:  Wells Fargo**
**Bank Address:**
Bank Phone:

4.    <u>Closing</u>.

    a.  The closing of the purchase and sale (the "Closing") shall be held on or before <u>**February 3, 2016**</u> (the "Closing Date"), at a place and time mutually agreed to by the parties.

    b.  At or subsequent to the Closing, Seller and Purchaser shall execute and deliver any and all documents and take any and all actions, which may be reasonably required for the implementation of this Agreement and the transactions contemplated hereby. This provision shall survive the closing of this transaction.

5.    <u>Transfer and Assignment of Horse</u>.  On the Closing Date, the Seller shall sell, assign, transfer, convey and deliver all right, title and interest to the Horse to Purchaser, and the Seller shall evidence such transaction by executing and delivering to Purchaser an "As Is" Bill of Sale in a form substantially similar to Exhibit "A" attached hereto.

6.    <u>Commission</u>.  Seller and Purchaser hereby agree and acknowledge that Heidi Dressage, LLC ("HeidiDressage") shall be entitled to receive a commission based upon the Purchase Price (the "Commission").  Seller shall be the party responsible for the payment of the commission.  The Commission shall be due and payable at Closing and HeidiDressage is hereby authorized to deduct said commission from the Sale Proceeds due Seller.

7.    <u>Due Diligence</u>.  Purchaser acknowledges that the Horse is being sold "**As Is, Where Is**" and "**With All Faults**" and acknowledges that Purchaser has been afforded ample opportunity to have Purchaser's trainers, consultants, agents and/or a duly licensed veterinarian conduct whatever inspections and/or examinations of the Horse they have determined to be necessary to determine its suitability for Purchaser's needs, and whether or not any inspections or examinations have been conducted, and hereby accepts the Horse in its present condition "**As Is, Where Is**" and "**With All Faults**" and as being satisfactory to Purchaser. Purchaser further acknowledges that all inspections and examinations of the horse shall be at the Purchaser's sole expense.

2

## DISCLOSURE

**Purchaser acknowledges and accepts that the Horse described above (or any horse) may have certain negative behavioral attributes and tendencies which may be considered dangerous. Such behavior includes, but is not limited to, bucking, bolting, rearing, spinning, biting, stomping and spooking. Purchaser acknowledges and accepts that horses generally, and in particular those negative equine behaviors described above, are inherently dangerous and agrees that equine activities generally, and in particular those negative equine behaviors described above, can result in damages, injury or death. Purchaser acknowledges, agrees and states that Seller, Adelheid M. Degele and HeidiDressage shall be released from and not be held liable for any damage, injury or death arising from this Horse and/or its behavior and that Purchaser hereby agrees that Purchaser shall indemnify and hold harmless Seller, Adelheid M. Degele and HeidiDressage from any and all damages or causes of action arising from this Horse and/or which may be claimed or filed against Seller, Adelheid M. Degele and HeidiDressage. This provision shall survive Closing indefinitely.**

8.  **Representations and Warranties of Seller**.  In order to induce Purchaser to enter into this Agreement and purchase the Horse, the Seller makes the following representations and warranties to Purchaser, which representations and warranties shall be true and correct as of the Closing Date:

   a.  Seller has full power and authority to enter into this Agreement and to carry out the transaction contemplated hereby.

   b.  Except as otherwise provided below, as of the Closing Date, Seller is the only legal, recorded, and beneficial owner of the Horse.  The Horse shall be, as of the Closing Date, free and clear of all liens, pledges, security interests, encumbrances or restrictions of any kind.  Seller shall have the right to satisfy any liens, pledges, security interests, encumbrances or restrictions affecting the Horse, if any, on the Closing Date with a portion of the Purchase Price.

   c.  Seller shall deliver to Purchaser, at Closing, all registration papers and passports for the Horse in Seller's possession and shall execute, deliver and take all necessary steps to effectuate the transfer and assignment of such registration and passport documents to Purchaser.

3

d. Seller, HeidiDressage and Adelheid M. Degele make no representations and/or promises, express or implied, including warranties of fitness for a particular purpose, unless expressly provided in this Agreement.

9. <u>**Representations and Warranties of the Purchaser**</u>.  In order to induce Seller to enter into this Agreement and sell the Horse, Purchaser makes the following representations and warranties to the Seller, which representations and warranties shall be true and correct as of the Closing Date:

a. Purchaser has full power and authority to enter into this Agreement and the financial ability to carry out the transaction contemplated hereby. The execution, delivery and performance of this Agreement by Purchaser and the consummation of the transaction contemplated hereby has been duly and validly authorized by all requisite action, and this Agreement constitutes the legal, valid and binding obligation of the Purchaser enforceable in accordance with its terms.

b. The representations and warranties contained in this Section do not contain any untrue statement of a material fact or omit to state a material fact required or necessary to be stated therein to make the statements made therein, in light of the circumstances in which they were made, not misleading.

c. Purchaser acknowledges that the Horse is being purchased in its present condition **"As Is, Where Is"** and **"With All Faults"** without any representations or warranties whatsoever as to condition, fitness for any particular purpose, merchantability or any other warranty, express or implied. Purchaser accepts that Seller, Adelheid M. Degele and HeidiDressage specifically disclaim any warranty, guaranty or representation, oral or written, past or present, express or implied, concerning the Horse.

d. Purchaser is familiar with horses and/or has had the opportunity to have the Horse inspected by Purchaser's trainers, consultants, agents and/or duly licensed veterinarians and hereby accepts the Horse in its present condition **"As Is, Where Is"** and **"With All Faults"** and as being satisfactory to Purchaser.

e. Purchaser is purchasing the Horse based solely upon Purchaser's own, or Purchaser's trainers', consultants', agents' and/or duly authorized veterinarians', independent investigations and inspections of the Horse and not in reliance upon any information provided by Seller, Seller's agents or contractors.

10. <u>**Transaction Expenses**</u>.  Whether or not the transactions contemplated

4

hereby are consummated, each of the parties hereto will pay, except as otherwise provided herein, its respective expenses, income and other taxes, and costs (including without limitation, the fees, disbursements and expenses of attorneys, accountants and consultants) incurred by it in negotiating, preparing, closing and carrying out this Agreement and the transactions contemplated by this Agreement.

11.   **Horse Expenses**.

a.   Up to and including the date of execution of the contract, Seller shall be responsible for the payment of any and all outstanding and unpaid expenses due for the Horse.  Such expenses shall include, but not be limited to, board, training, veterinary, farrier or shipping services.  Seller hereby authorizes HeidiDressage LLC to deduct the amount of any outstanding expenses from the Sales Proceeds.

b.   Upon Transfer of final payment of **$_89,000_(Eighty-nine_Thousand U.S. Dollars),** Purchaser shall be responsible for the payment of any expenses due for the Horse.  Such expenses shall include, but not be limited to, board/training (at the rate of $85.00 per day absent the execution of a separate Board and Training Agreement with HeidiDressage LLC), training (at HeidiDressage's then prevailing rates), veterinary, farrier or shipping services.  Purchaser acknowledges and agrees that HeidiDressage LLC will not deliver possession of the Horse to Purchaser until such outstanding and unpaid expenses are paid in full.

12.   **Notices**.  Any notices, requests, demands and other communications required or permitted to be given hereunder must be in writing and, except as otherwise specified in writing, will be deemed to have been duly given when personally delivered or facsimile transmitted, or three (3) days after deposit in the United States mail, by certified mail, postage prepaid, return receipt requested, as follows:

If to Purchaser:

Name: **Terri Smith**
Address: **19508 NE 120th St**
City/State:**Redmond, WA 98053**

If to the Seller:

Name: **Melissa Jackson**
Address:  **10651 Erie Rd**
City/State: **Parish, FL 34215**

With a copy to:
HeidiDressage, LLC
19603 Egret Lane
Loxahatchee, FL  33470

or to such other addresses or facsimile numbers as either party hereto may from time to time give notice of (complying as to delivery with the terms of this Section) to the other.

13.   **Risk of Loss**.  At Closing, Purchaser shall assume all responsibility for and all risk of loss for the Horse.

14.   **Default**.  In the event Purchaser defaults under the terms of this Agreement, this Agreement shall become null and void and of no further force and effect and the Seller shall be entitled to retain any monies paid to date by Purchaser as agreed upon liquidated damages.  In the event Seller defaults under the terms of this Agreement, this Agreement shall become null and void and of no further force and effect and the Seller shall refund to Purchaser any monies Purchaser has paid to date.  This paragraph shall be subject to the terms and conditions set forth in Paragraph 6 above. The horse is to be returned to the SELLER within two (2) days in the event of a default on the part of the Purchaser.

15.   **Entire Agreement**.  This Agreement constitutes the entire agreement between the parties hereto and supersedes all prior agreements, understandings, negotiations and discussions, both written and oral, between the parties hereto with respect to the subject matter hereof.  The parties acknowledge and agree that they have had ample opportunity to review the terms of this Agreement.

16.   **Benefits; Binding Effect; Assignment**.  This Agreement is for the benefit of and binding upon the parties hereto, their respective successors and, where applicable, assigns.  Neither party may assign this Agreement or any of its rights, interests or obligations hereunder without the prior written approval of the other party.

17.   **Waiver**.  No waiver of any of the provisions of this Agreement will be deemed to constitute or will constitute a waiver of any other provision hereof (whether or not similar), nor shall any such waiver constitute a continuing waiver unless otherwise expressly so provided.

18.   **No Third Party Beneficiary**.  Other than those provisions set forth in this Agreement relating to Adelheid M. Degele and HeidiDressage, LLC, nothing expressed or implied in this Agreement is intended, or will be construed, to confer upon or give any person or entity other than the parties hereto and their respective successors and assigns any rights or remedies under or by reason of this Agreement.

6

19.    **Section Headings**.  The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of any provisions of this Agreement.

20.    **Counterparts**.  This Agreement may be executed in any number of counterparts and by the parties hereto in separate counterparts, each of which will be deemed to be one and the same instrument.  A faxed signature shall be accepted and considered the same as an original signature.

21.    **Litigation**.  If any legal action is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorney's fees, paralegal fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled. The parties agree that the venue for any legal action shall be in a court of competent jurisdiction located in Palm Beach County, Florida.

22.    **Remedies Cumulative**.  No remedy made available by any of the provisions of this Agreement is intended to be exclusive of any other remedy, and each and every remedy is cumulative and is in addition to every other remedy given hereunder or now or hereafter existing at law or in equity.

23.    **Governing Law**.  This Agreement will be governed by and construed and enforced in accordance with the internal laws of the State of Florida.

24. **Confidentiality:** The terms of this Agreement shall be confidential and, shall not be disclosed to anyone by anyone for any reason.

**IN WITNESS WHEREOF**, the parties hereto have each executed and delivered this Agreement as of the day and year first above written.

**PURCHASER:**
<u>Name: **Terri Smith**</u>

7

Address: **19508 NE 120th St**
City/State:**Redmond, WA 98053**

_____          02-03-16
**(Signature)**                                          **date**

**SELLER:**

Name: **Melissa Jackson**
Address: **10651 Erie Rd**
City/State: **Parish, FL 34215**

_____          2-03-2016
**(Signature)**                                          **date**

8

**EXHIBIT "A"**
**BILL OF SALE**

KNOW ALL MEN BY THESE PRESENTS, that **Melissa Jackson**  ("Seller") having a mailing address of **10651 Erie Rd, Parish, FL 34215,** party of the first part, for and in consideration of the sum of $**_100,000_  (One hundred thousand dollars)** *Custom Saddle, Double bridle and blankets are included in purchase price* (and other good and valuable consideration) to it paid by **Terri Smith**, ("Purchaser") having a mailing address of **19508 NE 120th St, Redmond, WA 98053,** party of the second part, the receipt and sufficiency of which are hereby acknowledged, has granted, bargained, sold, transferred, set over and delivered, and by these presents does grant, bargain, sell, transfer, set over and deliver unto the party of the second part, its successors and assigns, **"As Is, Where Is"** and **"With All Faults"**, that certain Horse (as defined below) described as follows:

THAT CERTAIN **13** YEAR OLD  **Hanoverian**, APPROXIMATELY **16.2** HANDS TALL, WITH **a star with connected irregular stripe** ON ITS FACE/FOREHEAD AND **Hanoverian** BRAND ON ITS LEFT HIND QUARTER AND WITH THE REGISTERED NAME OF "**Whirlpool**", BORN **2003,** BY **Widmark** OUT OF **Glimmer** BEARING **USEF Registration # 4905852,** AND **USDF # 1050628** (the "Horse").

TO HAVE AND TO HOLD the same unto the party of the second part, its successors and assigns forever.

And the party of the first part, for herself, her successors and assigns, hereby covenants to and with the party of the second part, that she is the lawful owner of said Horse; that said Horse is free from all liens and encumbrances; that she has good right and title to sell the same as aforesaid; and that she will warrant and defend the same against the lawful claims and demands of all persons whomsoever and further provided that the party of the first part, hereby disclaims any and all guaranties or warranties, express or implied, as to the condition, merchantability or fitness for a particular purpose of said Horse, and that said Horse is being sold in its present condition and location, **"As Is, Where Is"** and **"With All Faults"**.

IN WITNESS WHEREOF, the party of the first part has caused her name to be hereunto subscribed this **3rd** day of **February, 2016**.

Melissa Jackson

9

Re: Contract

**From:** HeidiDressage LLC <heididressage@aol.com>
**To:** Terri <terri3204@aol.com>
**Subject:** Re: Contract
**Date:** Wed, Feb 3, 2016 12:05 pm

No. .. none that I'm aware of,  that's just a general clause :)

* Please excuse brief email and/or any typos, this email was sent via Phone

Kindest Regards,
Heidi Degele
19603 Egret Lane
Loxahatchee, FL 33470
Www.HeidiDressage.com
Ph: 561 294-4110
Fax: 561 753-9325

——— Original message ———
From: Terri <terri3204@aol.com>
Date:02/03/2016 1:32 PM (GMT-05:00)
To: Heidi Degele <heididressagellc@gmail.com>
Cc: heididressage@aol.com
Subject: Re: Contract

In reference to the "as is" "with all faults" are there any other known issues outside of the colic surgery?
Behavior issues, injury, lameness, material illness?

Sent from my iPad

On Feb 3, 2016, at 10:40 AM, Heidi Degele <heididressagellc@gmail.com> wrote:

HI Terri

My normal e-mail is HeidiDressage@aol.com, but it is not letting me send the contract this am.
Let me know you got this...?

I am so happy for you!!  Congratulations!!!

Heidi

fax 561 753 9325

<feb 3 2016 WHIRLPOOL Contract BILL OF SALE.docx>



PLAINTIFF'S
EXHIBIT
8

-----Original Message-----
From: Mydressage <mydressage@aol.com>
To: Heididressage <Heididressage@aol.com>
Sent: Mon, Feb 15, 2016 2:51 pm
Subject: Fwd: "whirlpool" Jackson insurance vet report

Thank you for letting me know Hooli arrived safe and is doing well.
I made a claim back in 2014 for a reaction he had to being
administered Tildren and Oshpos. Hooli was given IV fluids for a
couple of day, had his levels checked and was back to work the next
day. Hooli recovered 100%  and was showing in January at Global
Dressage Festival 3.
I have attached the insurance vet report.
Best Regards,
Melissa Jackson


-----Original Message-----
From: ROBERTSCOTTDVM <robertscottdvm@aol.com>


https://mail.aol.com/webmail-std/en-us/PrintMessage                    3/1/2016



Case 9:16-cv-81454-KAM   Document 1   Entered on FLSD Docket 08/17/2016   Page 26 of 27
Fwd: "whirlpool" Jackson insurance vet report

Page 3 of 3

To: robertscottdvm <robertscottdvm@scottequineservices.com>; myjdressage
<myjdressage@aol.com>; jdurning <jdurning@GAIG.com>
Sent: Fri, Dec 12, 2014 7:11 am
Subject: "whirlpool" Jackson insurance vet report

Sent from my iPhone

.

Great American Insurance
Equine Claims
P. O. Box 2428
Cincinnati, OH 45201
800.331.0211
Fax: 513.345.1362

VETERINARIAN'S REPORT

**\*\*ANY CHARGES FOR COMPLETION OF THIS FORM ARE THE**
**RESPONSIBILITY OF THE NAMED INSURED\*\***

Claim # A00043854  JAD          Please check one:  ___X___ Attending  _____ Consulting

Veterinarian:  Dr. Robert Scott
Scott Equine Associates

1. Owner's Name: Melissa Jackson

2. Animal Identification:  Age: 2003  Breed: HA Sex: G Full Name: WHIRLPOOL

3. Are you the regular attending veterinarian? _YES_ If not, who is? _____

4. What is the date of onset for this condition? __11/17/14__ Time _____

5. When did you first examine for this condition? __11/17/14__ Time _____

6. Have you or anyone else in your practice previously examined this horse? _YES_

   If yes, for what reason? _PERFORMANCE EVALUATIONS 9/12/14 - NO LAMENESS AT_
   _THAT TIME_

7. Where was this animal located at the time of your exam? _FL_

8. What was your diagnosis of the illness or injury? _LF COFFIN JT ARTHROSIS; THE HORSE_
   _THEN SUFFERED RENAL INSUFFICIENCY AS A RESULT OF TILDREN THERAPY_

9. What was the probable cause of the illness or injury? _TRAUMA_
   _____

10. Did you render the initial care? _YES_ If not, which veterinarian did? _____

11. Please describe the treatment provided. _CHANGE SHOEING; ADMINISTER_
    _TILDREN (FOOT PERFUSION) AND OSPHOS , IV FLUIDS; SERUM_
    _CHEMISTRY_

12. Does this illness/injury appear to be an entirely new one? _YES_ Is this illness/injury related to or a recurrence of a previous
    one? _NO_

13. Has animal received proper care and treatment for illness/injury? _YES_

14. Was illness/injury in any way related to abuse/neglect? _NO_

15. Prognosis: Life _EXCELLENT_ Soundness _VERY GOOD_

16. If euthanized, was it based on humane reasons? _____

17. What was the date and time of death? _____

I, the undersigned, do hereby declare the above statements are true and accurate to the best of my knowledge and that no
information has been withheld by me in reference to this case.

Signature _M. Scott_ Date _12/10/14_ Phone _954 325-9262_

Great American Insurance, Equine Claims, P. O. Box 2428, Cincinnati, OH 45201 Phone: 800-331-0211 Fax: 513-345-1362

ANY CHARGES FOR THE COMPLETION OF THIS FORM ARE THE RESPONSIBILITY OF THE NAMED INSURED