UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-81454-CIV-MARRA

TERRI SMITH,

Plaintiff,

vs.

MELISSA JACKSON, HEIDI DRESSAGE, LLC,
a Florida corporation and ADELHEID DEGELE
a/k/a HEIDI DEGELE,

Defendants.

_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant Melissa Jackson's Motion to Dismiss

Plaintiff's First Amended Complaint (DE 18) and Defendants Heidi Dressage, LLC and

Adelheid Degele's Motion to Dismiss Counts III, IV, V, VI, VII and X of Plaintiff's First

Amended Complaint (DE 23).  The Court has carefully considered the Motions and is otherwise

fully advised in the premises.

I. Background

Plaintiff Terri Smith ("Plaintiff") brings a ten-count Amended Complaint against

Defendants Melissa Jackson ("Jackson"), Heidi Dressage, LLC ("Dressage") and Adelheid

Degele ("Degele") (collectively, "Degele Defendants").  Plaintiff sues for rescission against

Jackson (count one), respondent superior against Jackson (count two), fraudulent inducement

against all Defendants (count three), negligent misrepresentation against all Defendants (count

four), civil conspiracy against all Defendants (count five), a violation of the Florida's Deceptive

and Unfair Trade Practices Act ("FDUPTA"), Florida Statute, Chapter 501, against all

Defendants (count six), breach of express warranty of merchantability and/or use of trade pursuant to Florida Statute § 672.313 against all Defendants (count seven), breach of implied warranties of merchantability and use of trade pursuant to Florida Statute § 672.314 against Jackson (count eight), breach of implied warranties of fitness for a particular purpose pursuant to Florida Statute § 672.315 against Jackson (count nine) and unjust enrichment against all Defendants (count ten).  (Am. Compl., DE 17.)

According to the allegations of the Complaint, this lawsuit stems from the sale by Jackson to Plaintiff of a thirteen year old horse known as Whirlpool ("horse"). (Am. Compl. ¶ 9.) Jackson is in the business of selling horses for profit. (Am. Compl. ¶ 11.)  Plaintiff is a non-professional equestrian who decided she wanted to purchase a horse to compete in dressage. (Am. Compl. ¶ 12.)  The Degele Defendants acted as Jackson's agents in connection with the sale of the horse. (Am. Compl. ¶ 14.)  Plaintiff asked the Degele Defendants if the horse had any medical issues and was told the horse underwent colic surgery in 2012, fully recovered and had no other health or medical issues. (Am. Compl. ¶¶16-17.)  The Degele Defendants assured Plaintiff that the horse was healthy, sound and fit to be used as a competitive dressage horse. (Am. Compl. ¶ 18.)  Based upon these representations, Plaintiff decided to purchase the horse for $100,000.00, subject to the performance of a pre-purchase examination. (Am. Compl. ¶ 19.)  On or about January 30, 2016, the pre-purchase examination was performed. (Am. Compl.  ¶ 20.) A MRI was not performed based upon the Degele Defendants' representations. (Am. Compl.  ¶ 21).

On February 3, 2016, the Degele Defendants sent Plaintiff a purchase and sale agreement ("PSA").  (Am. Compl.  ¶  23; PSA, Ex. A, DE 17.)  Upon receipt, Plaintiff sent an email to the

Degele Defendants in which Plaintiff once again asked if the horse had any other known issues such as behavior issues, injury, lameness or material illness. (Am. Compl. ¶ 24.) In response, the Degele Defendants stated the horse had no prior issues and that the "AS IS" clause in the PSA was just a "general clause." (Am. Compl. ¶ 25; Feb. 3, 2016 email, Ex. B, DE 17.) Plaintiff executed the PSA based on the Degele Defendants multiple assurances. (Am. Compl. ¶ 27.) Unbeknownst to Plaintiff, Defendants made misrepresentations and omissions of material facts regarding the horse's health, medical history and fitness for intended purpose. (Am. Compl. ¶ 29.)

On February 8, 2016, Plaintiff's insurance agent contacted an insurance underwriter to insure the horse, and the underwriter advised that the horse had prior insurance exclusions related to degenerative joint disease, bone spurs and arthritis. (Am. Compl. ¶ ¶ 30-32.) On February 15, 2016, Plaintiff spoke to the horse's veterinarian who advised Plaintiff that he had treated the horse for lameness in the left front leg. (Am. Compl. ¶ 41.) Plaintiff then had the horse examined by a veterinarian who diagnosed the horse as being lame in the right, and left front, and possibly left rear. (Am. Compl. ¶ 44.) A MRI revealed significant injuries in both front feet that had scaring and chronicity, which established injuries prior to Plaintiff's purchase. (Am. Compl. ¶ 47.) Plaintiff has offered to return the horse to Jackson. (Am. Compl. ¶ 69.)

In moving to dismiss, Jackson contends that the rescission claim fails because Plaintiff has failed to return the horse and that the written contract contradicts Plaintiff's claim. Next, Jackson states that respondent superior is a doctrine of liability, not a cause of action. With respect to the fraudulent inducement and negligent misrepresentation claims, Defendants argue that these claims are barred by the economic loss rule and that there is no justifiable reliance. In

3

addition, Defendants contend the civil conspiracy claim must be dismissed because it is not based on an independent tort. As for the FDUTPA claim, Defendants assert the allegations are contradicted by the terms of the PSA, and that the PSA provides more information than required by the Florida Administrative Code. With respect to the breach of express warranty claim and breach of implied warranties, Defendants contend that the allegations are contradicted by the PSA. Lastly, Defendants argue that the unjust enrichment count cannot proceed when there is an express contract.

In response, Plaintiff contends that the claim for rescission is valid because she did offer to return the horse and the language in the PSA does not release Defendants from fraudulent misconduct. Plaintiff also contends that respondent superior is a cause of action. Next, Plaintiff argues that the economic loss rule does not bar the fraudulent inducement claim and justifiable reliance is not an element for fraudulent inducement. Plaintiff also asserts the integration clause does not bar the fraudulent inducement and negligent misrepresentation claims. Plaintiff then contends that because the economic loss rule does not bar the tort claims, the conspiracy claim survives. Further, Plaintiff claims that failure to provide a complete medical history is a violation of Florida Administrative Code and FDUTPA. Plaintiff argues that the express and implied warranty claims are properly pled, and Defendants' arguments rely on the resolution of factual issues. Lastly, as for the unjust enrichment claim, Plaintiff states that it is valid and pled in the alternative.

II.  Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

III. Discussion

A. Rescission claim (count one)

To state a cause of action for rescission under Florida law, a party must allege:

(1) The character or relationship of the parties; (2) The making of the contract; (3) The existence of fraud, mutual mistake, false representations, impossibility of performance, or

other ground for rescission or cancellation; (4) That the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission. (5) If the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; (6) Lastly, that the moving party has no adequate remedy at law.

Billian v. Mobil Corp., 710 So. 2d 984, 991 (Fla. Dist. Ct. App. 1998) (quoting Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc., 174 So.2d 614, 617 (Fla. Dist. Ct. App. 1965)).

With respect to the rescission claim, the parties disagree only on one element; namely, does a rescission claim require Plaintiff to plead that she returned the horse or is it is sufficient for her to plead that she offered to restore the benefit she received under the contract by offering to return the horse?

Florida law requires a rescission claim to plead that "[i]f the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible." Id. at 991. Here, the Amended Complaint pleads that Plaintiff offered to return the horse to Jackson (Am. Compl. ¶ 69) and the Court finds this to be sufficient. Whether restoration is possible cannot be resolved at the motion to dismiss stage.

Next, Jackson claims that "impossibility of performance" and "frustration of purpose" have not been properly alleged. "Impossibility of performance refers to those factual situations where purposes for which the contract was made, have, on one side, become impossible to perform." Bland v. Freightliner LLC, 206 F. Supp. 2d 1202, 1208 (M.D. Fla. 2002) (citing Crown Ice, 174 So. 2d at 617). "Frustration of purpose refers to the condition surrounding the contracting parties where one of the parties finds that the purposes for which he bargained, and which purposes were known to the other party, have been frustrated because of the failure of consideration or impossibility of performance of the other party." Id.

6

Here, the Amended Complaint alleges that Plaintiff purchased the horse to use as a competitive dressage horse, Plaintiff relied upon Defendants' representations about the horse's health, the horse is lame and cannot serve that intended purpose.  Thus, the Amended Complaint alleges defects in the horse that "substantially frustrate the purpose and benefit of the bargain."  Bland, 206 F. Supp. at 1208.

For these reasons, the Court denies the motion to dismiss count one.[1]

B. Respondeat Superior (count two)

The Court grants Jackson's motion to dismiss the separate count labeled "respondeat superior."  Respondeat superior is a legal doctrine of liability, not a cause of action.  See Dieas v. Assoc. Loan Co., 99 So.2d 279, 281 (Fla. 1957) (under the doctrine of respondeat superior, an employer can be vicariously liable for the acts of its employees performed within the course of their agency or employment); Black's Law Dictionary (10th ed. 2014)  (respondeat superior is "the doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency").  The cases relied upon by Plaintiff merely discuss whether a tort claim can proceed against an employer based on the conduct of an employee. (Resp. at 8-9 citing Giambra v. Wendy's Intern., Inc., No. 8:08-cv-2016-T-27EAJ, 2009 WL 1686677, at * 2 (M.D. Fla. June 16, 2009) ("although not specifically stated, [c]ount [t]wo appears to allege a vicarious liability claim based on the employee's negligent attack on Plaintiff)).  The cases do not stand for the proposition that respondeat superior is a separate cause of action and the motion to dismiss this count is granted.  Plaintiff shall be granted leave to

---

[1] With respect to Jackson's argument that the integration clause bars the rescission claim, the Court will address the effect of the integration clause in section C supra.

amend to assert a legally recognized cause of action based upon the doctrine of respondent superior.

    C.  Fraudulent Inducement and Negligent Misrepresentation (counts three and four)

Defendants move to dismiss the claims for fraudulent inducement and negligent misrepresentation on the bases that (1) the Amended Complaint can not establish justifiable reliance on the false representation when the subsequent written contract contradicts an oral misrepresentation and (2) the claims are barred by the economic loss rule.

With respect to the element of justifiable reliance, the Court observes that both causes of action require the element of justifiable reliance.  See Rubesa v. Bull Run Jumpers, LLC, No. 09–CV–81107, 2010 WL 376320, at *3 (S.D. Fla. Jan 25, 2010)[2] (justifiable reliance required for fraudulent inducement claim); Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So. 2d 334, 336–37 (Fla. 1997) (negligent misrepresentation includes a requirement that the plaintiff justifiably rely upon the misrepresentation).

With that in mind, the Court must examine whether reliance on an oral misrepresentation is unreasonable when there is a subsequent written contract with an integration clause.  In MeterLogic, Inc. v. Copier Solutions, Inc., 126 F. Supp. 2d 1346 (S.D. Fla. 2000), the court addressed the impact of an integration clause on a plaintiff's claims for fraud and negligent misrepresentation stating:

[I]ntegration clauses do not cloak defendants with immunity from fraudulent statements.

---

[2] Plaintiff asserts that this Court rejected the proposition that justifiable reliance was required to state a claim for fraudulent inducement.  However, the case upon which Plaintiff relies to make this assertion addressed a claim for fraudulent misrepresentation, not fraudulent inducement.  Resp. at 10-11 (citing Zendejas v. Redman, NO. 15-81229-CIV-MARRA, 2016 WL 1242349, at * 6 (S.D. Fla. Mar. 30, 2016)).

Florida law is clear that if a party alleges that a contract was procured by fraud or misrepresentation as to a material fact, an integration clause will not make the contract incontestable, and the oral representations may be introduced into evidence to establish fraud.

Id. at 1363 (internal quotations and citations omitted).

The cases relied upon by Defendants do not convince the Court otherwise. Recently, the Eleventh Circuit reversed a district court's granting of summary judgment to a defendant on a fraudulent inducement claim. Global Quest, LLC v. Horizon Yachts, Inc., Horizon Group, et al., — F.3d —, 2017 WL 727142 (11th Cir. Feb. 24, 2017). The district court had relied upon "as is" and "entire agreement" clauses to hold that the plaintiff could not have relied upon the alleged pre-contractual misrepresentations that were contradicted by the later written agreement. Id. at * 3. In reversing, the Eleventh Circuit relied upon Oceanic Villas, Inc. v. Godson, 4 So. 2d 689 (Fla. 1941) which explained that:

[A]n as is clause does not bar a plaintiff from bringing a fraud claim. Specifically, the Florida Supreme Court in Oceanic Villas held that where an agreement is procured by fraud or misrepresentation every part of the contract is vitiated because it is well settled that a party can not contract against liability for his own fraud.

Global Quest, 2017 WL 727142, at * 3 (citing Oceanic Villas, 4 So. 2d at 690) (internal quotation marks and brackets omitted).

Next, the Court addresses whether the economic loss rule applies. In Tiara Condominium Association, Inc. v. Marsh & McLennan Cos., Inc., 110 So.3d 399 (Fla. 2013) ("Tiara"), the Florida Supreme Court explained, "the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." Id. at 401 (citation omitted). Tiara clarified that the economic-loss rule applies only to cases involving products liability. Tiara, 110 So.3d at 407.

9

Nonetheless, it is still possible to set forth a claim in tort between parties in contractual privity if a tort is alleged that is beyond and independent of the breach of contract claim.  See Tiara, 110 So.3d at 408 (Pariente, J., concurring) (quoting Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co., 482 So.2d 518, 519 (Fla. Dist. Ct. App. 1986)).

In the wake of Tiara, the Eleventh Circuit noted that "[w]hile the exact contours of this possible separate limitation, as applied post-Tiara, are still unclear, the standard appears to be that 'where a breach of contract is combined with some other conduct amounting to an independent tort, the breach can be considered negligence.'"   Lamm v. State St. Bank & Trust, 749 F.3d 938, 947 (11th Cir. 2014) (quoting U.S. Fire Ins. Co. v. ADT Sec. Servs., Inc., 134 So. 3d 477, 480 (Fla. Dist Ct. App. 2013)).

Courts in this District have continually followed the interpretation of Tiara suggested by the Eleventh Circuit in Lamm.  See, e.g., Burdick v. Bank of Am., N.A., 99 F. Supp. 2d 1372, 1378 ("[T]he alleged duty [element of a negligence claim] cannot stem from a contractual relationship between the parties.... To bring a negligence claim under Florida law, a party must demonstrate that 'the tort is independent of any breach of contract claim.'"   (quoting Tiara, 110 So. 3d at 408 (Pariente, J., concurring)); Kaye v. Ingenio, Filale de Loto-Que., Inc., No. 13-61687, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014) ("to set forth a claim in tort between parties in contractual privity, a party must allege action beyond and independent of breach of contract that amounts to an independent tort").

Recently, the Eleventh Circuit described the "minimal requirement" for a fraudulent inducement claim to be independent from a breach of contract claim; namely, the fraud allegations must be "separate and distinct" from a defendant's performance under the contract.

Global Quest, 2017 WL 727142, at * 6.  In Global Quest, the contract to purchase a yacht had an "as is" clause and no warranties[3] and the Court held that the fraudulent inducement claim survived because the fraud allegations concerned representations about the yacht's condition and the contract contained no statements about the yacht's condition.  Id. at * 6.  Here, the fraud allegations concerned representation about the horse's condition and the contract contained no such statements.  Thus, these claims survive.  See Supercase Enterprise Co., Ltd. v. Marware, Inc., No. 14-61158, 2014 WL 12495261, at * (S.D. Fla. Nov. 21, 2014) (negligent misrepresentation and fraudulent inducement claims survive post-Tiara when there are allegations that the defendants' misrepresentations fraudulently induced the plaintiff's entry into a contract).

> ### D.  Civil Conspiracy (count five)

Defendants move to dismiss the civil conspiracy claim because such a claim relies upon an independent tort, and the Amended Complaint fails to state claims for fraudulent inducement and negligent misrepresentation.

Under Florida law, in order to state a claim for civil conspiracy, a plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." Phillip Morris USA, Inc. v. Russo, 175 So. 3d 681, 686 n.9 (Fla. 2015) (citing Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997)).   A civil conspiracy derives from the underlying claim that forms the basis of

---

[3] There was an addendum to the contract that inserted a limited express warranty into the contract. Id. at * 1.

the conspiracy, a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim. <u>American United Life Ins. Co. v. Martinez</u>, 480 F.3d 1043, 1067 (11th Cir. 2007); <u>Behrman v. Allstate Ins. Co.</u>, 388 F. Supp. 2d 1346, 1353 (S.D. Fla. 2005) (citing <u>Posner v. Essex Ins. Co.</u>, 178 F.3d 1209, 1217 (11th Cir. 1999)).

Here, Plaintiff relies upon its tort claims which the Court has found viable. Therefore, the motion to dismiss count five is denied.

E.  FDUPTA claim (count six)

The FDUTPA claim is partly based on Rule 5H-26.004 of the Florida Administrative Code, which contains certain regulations relating to dual agents involved in the sale of horses. The Degele Defendants contend that the bill of sale and the PSA provide more information than required by the administrative code.[4]

Plaintiff alleges that the bill of sale did not include paragraphs 7 and 8 as required by the Florida Administrative Code.  (Am. Compl. ¶ 102.)  The Degele Defendants state that they provided more information than provided by those paragraphs.   However, in support, the Degele Defendants point to that information in the PSA, not the Bill of Sale.

The Court concludes that the purpose of the administrative code provision is to require the seller to provide certain information to a buyer.  It does not matter if the information is contained in a document labeled a "bill of sale" or in some other document, as long as the required information is provided.  Given that all the information required under the administrative code is contained in the PSA, the Court grants the motion to dismiss the FDUTPA

---

[4] For reasons stated <u>infra</u>, the Court rejects the Degele Defendants' argument that because the allegations of the Amended Complaint are contradicted by the terms of the PSA, the FDUTPA claim fails.

12

claim to the extent it claims a violation of the administrative code.

>F.  Breach of Express Warranty of Merchantability and/or Use of Trade and Breach of Implied Warranties of Merchantability and Use of Trade and Breach of Implied Warranties of Fitness for a Particular Purpose  (counts seven, eight and nine)

Defendants move to dismiss these three claims on the basis that the allegations are contradicted by the plain language of the contract, and the written contract therefore controls, including language that the PSA waives all warranty claims.  For the reasons stated infra in section C, the Court rejects this argument.  These claims may proceed.

>G. Unjust Enrichment (count ten)

Defendants contend that there cannot be a cause of action for unjust enrichment when the parties' relationship is governed by an express contract.  Even if the claim is pled in the alternative, Defendants argue that unjust enrichment may only pled in the alternative when at least one of the parties contests the existence of an express contract.  Plaintiff responds that a motion to dismiss for unjust enrichment on these grounds is premature until an express contract is proven.  The Court agrees.  As this Court stated in Matorella v.  Deutsche Bank Nat. Trust Co., 931 F. Supp. 2d 1218, 1227-28 (S.D. Fla. 2013):

> [A] party may plead in the alternative for relief under an express contract and for unjust enrichment. But unjust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid. . . In addition, it is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the unjust enrichment count fails. Until an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature.

Id. (Internal citations omitted).

For this reason, the Court denies the motion to dismiss the unjust enrichment claim.

>IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

13

1)   Defendant Melissa Jackson's Motion to Dismiss Plaintiff's First Amended Complaint (DE 18) is **GRANTED IN PART AND DENIED IN PART**.

2)   Defendants Heidi Dressage, LLC and Adelheid Degele's Motion to Dismiss Counts III, IV, V, VI, VII and X of Plaintiff's First Amended Complaint (DE 23) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of March, 2017.

_____
KENNETH A. MARRA
United States District Judge

14